UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

JESSE PERRY,                               )
for Himself and all Other Similarly        )
Situated Individuals,                      )
JOSHUA BURCHFIELD,                         )
for Himself and all Other Similarly        )
Situated Individuals,                      )
                                           )
            Plaintiffs,                    )
                                           )
v.                                         )      No.:   3:17-CV-234-TAV-HBG
                                           )
SCOTT COUNTY,                              )
SCOTT COUNTY SHERIFF,                      )
RONNIE PHILLIPS,                           )
in his Official Capacity,                  )
JOHN OR JANE DOES,                         )
Each Defendant Officers Sued               )
and Severally,                             )
                                           )
            Defendants.                    )

## MEMORANDUM OPINION AND ORDER

Plaintiffs allege the Scott County Jail's official or customary procedures for disease-screening failed to detect an incoming inmate's active tuberculosis. As a result, they argue, plaintiffs contracted tuberculosis in violation of their Eighth Amendment rights and various provisions of Tennessee state law. Because defendants are entitled to judgment as a matter of law on plaintiffs' § 1983 and § 1988 claims, and because plaintiffs do not oppose dismissal of their § 1985 claim, the Court will grant defendants' motion for summary judgment [Doc. 62] and dismiss without prejudice plaintiffs' state-law claims.

## I. Background

### A. The Complaint

Plaintiffs Jesse Perry and Joshua Burchfield ("plaintiffs") allege they contracted tuberculosis while housed in the Scott County Jail in Scott County, Tennessee, during summer 2016.[1] Perry was arrested and booked into the Scott County Jail on a violation of parole on or about June 5, 2016 [Doc. 30 p. 6]. At the time he was released from his previous correctional facility, he was screened and tested negative for tuberculosis ("TB") [*Id.* at 6–7].[2] Burchfield was already serving time in Scott County Jail when Perry arrived.[3]

Perry and Burchfield were housed in the same pod at Scott County Jail as a third inmate ("Inmate X") [*Id.* at 7]. When Inmate X arrived, Burchfield overheard Inmate X tell jail personnel that he had TB by "emulating a 'cough,' saying he was 'sick,' and showing them his positive TB skin test," but they ignored him [*Id.*; Doc. 70 p. 4].[4]

---

[1.] For the purpose of summary judgment, the Court draws all inferences and views all facts in the light most favorable to plaintiffs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[2.] Perry's medical history form dated June 15, 2016, states "Feb 2015 Last ppd negative" [Doc. 70-5].

[3.] According to Burchfield's deposition testimony, he arrived at Scott County Detention Facility on September 28, 2015, after spending about two months at Fentress County Jail [Doc. 62-3 p. 3]. Burchfield testified that he received a TB skin test around the time of his initial incarceration at Fentress, and he was told the test result was negative although he could not say whether it was negative for latent TB [Doc. 70-4 p. 33–34].

[4.] Burchfield testified that Inmate X had a skin test showing he was positive for tuberculosis when he arrived at Scott County Jail and that he tried to tell at least two correctional officers, Lisa Terry and Tiffany Burge, that he had TB during booking [Doc. 62-3 p. 5–6]. According to Burchfield, Inmate X had "very limited English skills" and communicated by saying he was sick and miming coughing [*Id.* at 6]. Burchfield also testified that he, Burchfield, told Terry, the nurse Brittany Massengale, and two other jail personnel that Inmate X needed help [*Id.*; *see also* Doc. 70 p. 4].

Burchfield spent thirty (30) days in a holding cell with Inmate X and observed Inmate X "continuously 'coughing up a lung'" [Doc. 70 p. 4 (quoting Burchfield Dep. p. 103–04)]. The pod where the jail eventually housed Perry, Burchfield, and Inmate X typically held at least forty (40) inmates, and plaintiffs remained in the same pod as Inmate X until mid-September 2016 [*Id.*].

Perry and Burchfield were transferred to state prison on or about September 15, 2016 [*Id.*]. Receiving a medical evaluation on their entrance, both men tested positive for latent TB [*Id.*]. As a result of their diagnosis, they have undergone nine (9) months of a vitamin regimen, will have to be tested annually for TB, and will always test positive for the disease [*Id.*].

Perry and Burchfield sued Scott County, Scott County Sheriff Ronnie Phillips in his official capacity, and John or Jane Doe officers employed as deputies, guards, jailers, or corrections officers at the Scott County Jail [Doc. 30]. Plaintiffs allege that defendants failed to screen inmates properly before placing them in Scott County Jail's general population and failed to provide qualified medical personnel to conduct such screenings [*Id.* at 6]. They assert civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1988 and several state-law claims—res ipsa loquitur, negligent training and supervision of John and Jane Does, and outrageous conduct/infliction of emotional distress [*Id.* at 3–10].

### B.    Exhibits

Defendants attach various affidavits and other documents to their motion for summary judgment to show they had policies to screen for tuberculosis, which they followed in Inmate X's case. Scott County Policy and Procedure 11.01, which was issued

3

prior to Inmate X's booking, required that any inmate admitted into the facility would be "medically evaluated/screened immediately upon being accepted" [Doc. 62-1 p. 16].[5] Scott County Policies 4.02 and 11.01 provided respectively that "[n]ew inmates suspected of harboring communicable diseases [were] to be isolated at once" and that "[i]nmates who claim[ed] to be infected with a communicable disease w[ould] be medically isolated from the general population pending medical evaluation and review" [*Id.* at 12, 15]. Policy 11.01 further provided that the staff nurse would conduct a physical examination within fourteen (14) days of the initial screening by a booking officer [Doc. 70-2 p. 9–10]. The policy stated, "The examination may include *but is not limited to* . . . [l]aboratory and/or diagnostic testing or tests to detect communicable diseases, including venereal disease and tuberculosis" [Doc. 62-1 p. 18].

Captain Glynndara Tucker, Chief Jailer at Scott County, stated in her affidavit that the Scott County Sheriff's Department "has not enacted any 'cost saving' policies, protocols or customs that deviate from their clearly established policies and procedures at the Detention Facility"; rather, it has enacted "numerous policies . . . to adequately screen for communicable diseases, like tuberculosis" [Doc. 62-1 p. 3].

Captain Tucker asserted—and the booking and medical records of Perry, Burchfield, and Inmate X confirm—that the jail screened each of these inmates

_____

[5.] The version of Policy 11.01 included in this document was issued prior to Inmate X's booking but revised subsequently, and defendants do not explain how the revisions affected the original policy. However, plaintiffs do not argue that any revisions altered the policy's relevant provisions and appear to cite to the revised policy. Accordingly, the Court cautiously treats the policy attached to defendants' motion for summary judgment, Exhibit B, as identical in all relevant respects to the policy in effect at the time of Inmate X's booking and incarceration.

4

immediately on their arrival and provided a physical examination with the staff nurse within fourteen (14) days of their booking [*Id.* at 5–9, 24–28, 30–35]. Their booking forms and physical forms indicate that each of the three (3) men denied "hav[ing] any medical problems" at the time of booking and denied experiencing any of six (6) symptoms indicative of TB infection during their physical exams [*Id.*].[6]

In particular, the "Inmate Booking Screening Questions" for Inmate X indicate he answered "no" when asked if he had a "serious medical condition that m[ight] require attention" while incarcerated [*Id.* at 32]. Additionally, Inmate X's physical examination conducted by Brittany Massengale in March 2016, six (6) days after his booking into Scott County, showed all negative answers to the "TB Screening Questions," which inquired about common symptoms, and a blank next to "TB test (if performed)" [Doc. 70-6 p. 1].[7] A later exam performed by a different nurse on July 18, 2017, also contained negative answers to the TB screening questions but noted next to "TB test (if performed)" "positive Hx" [*Id.* at 2; *see also* Doc. 70-3 p. 14], which plaintiffs appear to believe means "positive history" [Doc. 70 p. 5].[8] No notation indicates whether a TB test was performed during

---

[6.] Defendants state that tuberculosis "exists in both dormant and active stages," noting that during the dormant stage, "the individual is not infectious and exhibits no symptoms" [Doc. 81 p. 2 (quoting *Mawby v. Zent*, 12 F.3d 213, 1993 WL 498205, at *2 (6th Cir. Dec. 2, 1993) (unpublished table opinion)]. They also state that a positive TB skin test coupled with a negative chest x-ray would negate the existence of active tuberculosis [Doc. 81 p. 2 (citing *Jackson v. Blackwelder*, No. 4:09-CV-13, 2010 WL 625385, at *3 (E.D. Tenn. Feb. 17, 2010) (quoting testimony)].

[7.] Plaintiffs argue that this exam form reveals that Inmate X "was not screened, tested, or evaluated for TB" [Doc. 70 p. 5].

[8.] Plaintiffs state incorrectly that Massengale performed the July 2017 physical, implying this reveals she knew at the time of Inmate X's March 2016 physical that he had a positive history of tuberculosis [*Id.* at 5, 8].

5

the July 2017 exam [Doc. 70-6 p. 2]. A radiology report dated November 30, 2017, indicating the result of a chest X-ray performed on Inmate X, found "[n]o active tuberculosis" [Doc. 62-1 p. 36]. Captain Tucker noted that she was unaware of any officer or other inmate who interacted with Inmate X at Scott County complaining of tuberculosis-like symptoms "during the pertinent time period," other than Perry and Burchfield [*Id.* at 9].

Plaintiffs counter defendants' argument that the jail followed Scott County's tuberculosis screening procedures by pointing to deposition testimony attached to their response to the motion for summary judgment. Sheriff Phillips testified in deposition that the Scott County Jail did not require a TB skin test, that it probably did not so require for cost reasons, and that he did not know how much it would cost to test every inmate [Doc. 70-2 p. 7–8]. Captain Tucker, who has worked for the Scott County Sheriff's Department continuously since 2004 and served as Chief Jailer since 2010, testified that she could only remember one case of active TB where an inmate needed to be isolated and the health department was called [Docs. 70-3 p. 15; 62-1 p. 1]. In that case, which took place in 2004 or 2005 at the old jail, before Captain Tucker was jail administrator, the health department contacted the jail the day after the inmate was booked to report that the inmate had TB, and the department came to collect the inmate and tested everyone who had come into contact with him [Doc. 70-3 p. 5–6, 27–28]. The only other instance of TB testing Captain Tucker could recall occurred in relation to this case: Captain Tucker ordered a TB skin test for four

(4) inmates after Perry and/or Burchfield contacted the inmates saying he or they had contracted TB while in Scott County Jail, and the inmates, who had shared a cell with Perry and/or Burchfield, asked to be tested [*Id.* at 29]. The four inmates tested negative for TB on August 1, 2017 [*Id.*].

## II.    Analysis

The Court has jurisdiction to consider defendants' summary judgment motion because it has federal-question jurisdiction over plaintiffs' federal civil-rights claims pursuant to 28 U.S.C. § 1331. It also has supplemental jurisdiction over plaintiffs' state-law claims, which are "so related to claims [within the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn.

1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record, including depositions, documents, affidavits, and other materials, upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c)(1)(A). There must be more than a "mere scintilla of evidence" to withstand a motion for summary judgment, *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007), and any genuine issue of fact must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. 477 U.S. at 248.

### A.     Redundant Claims

Defendants' motion for summary judgment argues in a footnote that the claims against Sheriff Ronnie Phillips in his official capacity are redundant [Doc. 63 p. 7 n.2]. In contrast to personal-capacity suits, which seek to impose personal liability on a government official for actions he takes under color of state law, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*; *see also Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) ("A suit against an individual 'in his official capacity' has been held to be essentially a suit directly against the local government unit and can result in that unit's liability to respond to the injured party for his injuries.").

Here, plaintiffs sued Scott County, as well as Scott County Sheriff Ronnie Phillips. Sheriff Phillips is an agent of Scott County, sued in his official capacity, and Scott County received notice and an opportunity to respond. The official capacity claims against Sheriff Phillips are therefore redundant, and the Court will **DISMISS** them. *See C.K. v. Bell County Bd. of Educ.*, 839 F. Supp. 2d 881, 884 (E.D. Ky. 2012) (dismissing redundant official-capacity claims against employees of an entity which plaintiffs had also sued); *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996).

### B. Federal-Law Claims Whose Dismissal Is Unopposed

Defendants ask for summary judgment on plaintiffs' § 1983 claims against John or Jane Does and on plaintiffs' 42 U.S.C. § 1985 claim [Doc. 63 p. 4–6, 9–10]. Plaintiffs do not oppose dismissal of these claims [Doc. 70 p. 10], and they have failed to allege facts in support of the elements of these causes of action. The Court will therefore **DISMISS** these claims.

### C. Remaining Federal-Law Claims

Defendants also contend they are entitled to summary judgment on plaintiffs' claim under 42 U.S.C. § 1983 [Doc. 63 p. 14]. They argue that the Court should accordingly dismiss plaintiffs' claim under § 1988, which provides that the Court may award a reasonable attorney's fee to the prevailing party in a federal civil rights action [*Id.* (citing 42 U.S.C. § 1988(b))]. Plaintiffs' § 1983 claim rests on their allegation that it was the policy or custom of Scott County Jail to place inmates in general population without

properly screening them, which "inaction violates the Eighth Amendment of the United States Constitution" [Doc. 30 p. 8].[9]

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Supporting a claim of deliberate indifference to serious medical needs requires a showing of objective and subjective elements. *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). Satisfying the objective component requires a demonstration of the existence of a "sufficiently serious" medical need. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "While exposure of an inmate to an unreasonable risk of serious damage to future health may violate the Eighth Amendment," *Watkins v. Campbell*, 142 F.3d 438; 1998 WL 69094, at *1 (6th Cir. 1998) (unpublished table opinion) (citing *Helling v. McKinney*, 509 U.S. 25, 32–35 (1993)), the subjective component requires plaintiffs to "show that the prison

---

[9.] As discussed further below, plaintiffs fail to give precise definition to the policy or custom they challenge. Reading the amended complaint and response to the motion for summary judgment in tandem, the Court finds that plaintiffs appear to believe defendants' policy requires a tuberculosis skin test or equivalent screening mechanism and that they intend to challenge defendants' failure to administer such a test either during the jail's initial screening at booking or during the fourteen-day physical examination. Although plaintiffs allege under "general factual allegations" that defendants "[f]ailed to provide sufficient qualified medical personnel to properly screen incoming prisoners for medical conditions, including diseases" [Doc. 30 p. 6], and though they state that this allegation is incorporated into their § 1983 claim [*Id.* at 8], plaintiffs do not point to evidence in the record supporting this allegation, and their response to the motion for summary judgment does not discuss this allegation in reference to the § 1983 claim [Doc. 70 p. 6–9]. Therefore, the Court will treat this allegation as supportive of plaintiffs' unconstitutional policy or custom claim, rather than as an independent failure to train theory of liability.

authorities knew of and manifested deliberate indifference towards the inmate's health problems." *Henderson v. Martin*, 73 F. App'x 115, 118 (6th Cir. 2003).

In this case, defendants contest that plaintiffs can meet the objective prong of a deliberate indifference claim, arguing they do not demonstrate that Inmate X had active tuberculosis and thus fail to show a substantial risk of harm to their health [Doc. 81 p. 4]. However, defendants raise this argument for the first time in their reply to plaintiffs' response to their motion for summary judgment, having focused their original argument on the subjective prong. Generally, arguments raised for the first time in a reply to a response to a summary judgment motion are waived. *Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008). A court may deviate from this rule in "'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice.'" *Id.* (quoting *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)). However, the Court does not find it necessary to examine whether this case presents such a situation because plaintiffs cannot meet the subjective prong of the deliberate indifference analysis, an issue which the parties have fully briefed.

Because Perry and Burchfield sued only Scott County, Scott County Sheriff Phillips in his official capacity, and John and Jane Doe officers, whose dismissal plaintiffs do not oppose, plaintiffs have raised a § 1983 claim based on municipal liability alone. Yet, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, to establish an Eighth Amendment violation, plaintiffs must demonstrate that "the municipality itself, through its acts, policies, or customs, violated [their] Eighth

Amendment rights by manifesting deliberate indifference to [their] serious medical needs." *North v. Cuyahoga Cty.*, 754 F. App'x 380, 391 (6th Cir. 2018). "This in turn typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005) (citing *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997)). "Additionally, a § 1983 plaintiff must prove that the municipal policies and practices directly caused the constitutional violation." *Id.* (citing *Gray ex rel. Estate of Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005)). That is, she must show "that the particular injury was incurred *because* of the execution of that policy." *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015).

Summary judgment is appropriate as a preliminary matter if plaintiffs fail to present sufficient evidence to establish the existence of a policy or custom of inaction, *Doe*, 103 F.3d at 508–09, and secondarily, if the record fails to support a jury finding of deliberate indifference. *Winkler v. Madison Cty.*, 893 F.3d 877, 885 (6th Cir. 2018).

There are four ways to show "the existence of a municipal policy or custom leading to [an] alleged violation": (1) "the municipality's legislative enactments or official policies"; (2) "actions taken by officials with final decision-making authority"; (3) "a policy of inadequate training or supervision"; or (4) "a custom of tolerance or acquiescence of federal rights violations." *Winkler*, 893 F.3d at 901 (citation omitted).

Plaintiffs do not consistently identify their chosen path, and their way is further muddied by their failure to describe clearly the policy or custom they challenge. Plaintiffs' amended complaint refers to an "actual and/or accepted policy" of failing to properly

screen inmates before placing them in general population, suggesting both an official policy and a custom [Doc. 30 p. 8], but plaintiffs state in their response to the motion for summary judgment that they intend to challenge Scott County Jail's "custom and longstanding operating procedure of not . . . do[ing] what their own written policies require," namely "screen[ing] or test[ing] inmates for TB, even those who self-report and are known to have a 'positive hx'" [Doc. 70 p. 9]. Additionally, while plaintiffs use the language "before placing [inmates] in general population" in the amended complaint [Doc. 30 p. 8], their pleadings taken as a whole indicate they intend to challenge the procedure at booking (which takes place before placing inmates in the general population) in combination with the procedures followed during the physical examination (typically performed after placing inmates in general population).

Plaintiffs also use the terms "screening" and "testing" almost interchangeably, and they fail to distinguish between skin testing and any other kind of TB testing.[10] Although the Court believes plaintiffs may intend to challenge defendants' failure to administer a tuberculosis skin test, the Court is not obliged to articulate plaintiffs' argument for them, so it will treat plaintiffs' complaint as challenging defendants' general screening procedure both as a policy and, in the alternative, as a custom. In any case, plaintiffs fail to present sufficient evidence to establish the existence of a policy or custom of inaction.

---

[10.] *See, e.g.*, [Doc. 70 p. 2 (stating "Scott County does not conduct regular screening of inmates for TB" and pointing for support to Sheriff Phillips's admission in deposition that the county does not require "TB tests")]; *see also* [Doc. 70 p. 1 (arguing "deliberate indifference resulted from the county's longstanding custom of not screening inmates for this deadly disease, despite adopting a written policy that requires all inmates to be tested")].

###     1.     An Unconstitutional Policy

If a contested policy is facially lawful, plaintiffs must show that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Gregory v. City of Louisville*, 444 F.3d 725, 252 (6th Cir. 2006) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997)).  Defendants present evidence that at the time of Inmate X's booking, Scott County Jail had a policy of screening entering inmates for illnesses, including tuberculosis, in two stages: (1) by observing incoming inmates at booking for suspect symptoms of communicative disease, asking, "Do you have any medical problems at this time?" and immediately isolating inmates who displayed suspicious symptoms or stated they was infected with a communicable disease; and (2) by subjecting each inmate to a physical examination within fourteen (14) days of arrival, during which the staff nurse inquired about six (6) symptoms indicative of tuberculosis [*See, e.g.*, Doc. 62-1 p. 12, 16, 34–35].

Plaintiffs do not claim—and certainly do not present legal support for finding—that this screening policy was facially unconstitutional.[11]

---

[11.] *Cf. Johnson v. Blackwelder*, No. 4:09-cv-13, 2010 WL 625385, at *2–3 (E.D. Tenn. 2010) (granting summary judgment to defendants where inmate alleged to have exposed plaintiff to TB had a positive TB skin test and a negative chest X-ray, and where jail's policy consisted of administering a TB skin test on booking only if the arrestee answered "yes" to questions concerning recent weight loss, coughing, night sweats, or a history of TB and where jail nurse would give prisoner a TB skin test during fourteen-day physical examination only if inmate could not provide date of TB test within one year of examination or nurse could not verify TB skin test at another facility).

Nor have plaintiffs presented evidence that defendants' policy "posed an obvious risk to inmates' constitutional rights to adequate medical care." *Winkler*, 893 F.3d at 902 (finding that plaintiff failed to show policy was taken with deliberate indifference where plaintiff presented no evidence that entity's staffing or other policies presented an obvious risk). While defendants concede they do not perform TB skin tests on inmates "unless they do not pass the initial screening" [Doc. 63 p. 11], plaintiffs produce no independent evidence that screening for tuberculosis without conducting a skin test posed an obvious risk to inmates' constitutional rights. *Miller v. Calhoun Cty.*, 408 F.3d 803, 816 (6th Cir. 2005) (upholding finding that county was not "deliberately indifferent" where plaintiff "fail[ed] to adduce independent evidence tending to show that such a policy was unreasonable"). Plaintiffs have presented some evidence that Inmate X had active tuberculosis at one time, namely: Perry and Burchfield's allegations regarding Inmate X's symptoms, his positive TB skin test, and his communication that he had TB; the "positive Hx" notation on Inmate X's July 2017 physical; and plaintiffs' testing positive for latent TB after apparently testing negative for TB prior to entering Scott County Jail. Yet, even if this was enough to create a genuine dispute of fact, it would not be material because plaintiffs have not presented evidence that the jail received notice prior to Inmate X's incarceration of any deficiency in its policy.

In fact, contrary to their intention, plaintiffs highlight several parts of the record indicating that Scott County did not "know of and disregard[ an obvious] risk" to inmates' serious medical needs. *Winkler*, 893 F.3d at 902. Captain Tucker could only recall one instance during her tenure at the Sheriff's Department requiring the isolation of an inmate

15

arriving at the jail with active tuberculosis, and that case occurred at the old jail [Doc. 70-3 p. 16]. Although it appears the jail did not identify the inmate's tuberculosis at booking in that case, the health department took the inmate into custody before the inmate's fourteen-day physical [*Id.*]. Thus, even assuming the old jail had the same screening policy at that time as the new jail during the relevant period, that incident failed to test the second part of the jail's policy. And, even if that case had fully tried the policy at the old jail in 2004 or 2005 [*Id.*], it arguably would not have provided notice of any deficiency in the county's policy at a new jail location twelve (12) or thirteen (13) years later. Yet, the only other occasion Captain Tucker could remember of ordering a TB skin test occurred *after* Inmate X's booking when one or both of the plaintiffs in this case contacted certain inmates saying he or they had tested positive for TB, and Captain Tucker ordered tuberculosis skin tests for the inmates [*Id.* at 29; *see also* Doc. 70 p. 5].[12]

The isolated instance of Perry and Burchfield's alleged infection simply does not provide sufficient support for a reasonable jury to find Scott County Jail had a policy of deliberate indifference. *See Miller*, 408 F.3d at 816 ("Indeed, there is no evidence of similar incidents having previously occurred at the Correctional Facility such that the County would be on notice of the danger of constitutional violations. Under such circumstances, the District Court did not err in concluding that the County was not 'deliberately indifferent' to Stanford's serious medical condition."); *see also North*, 754 F. App'x at 392 (finding that "[w]hile imperfect," problems with the jail's recordkeeping

---

[12.] The record does not indicate that the jail knew Inmate X was the alleged carrier of tuberculosis at the time Captain Tucker ordered TB testing of the other inmates.

system, which did not include a system to ensure ordered medical tests and treatments were performed, "seem[ed] to consist of 'one or two missteps' rather than the kind of widespread, gross deficiencies that would support a finding of deliberate indifference.").

## 2. An Unconstitutional Custom

Plaintiffs' challenge also fails if the Court analyzes defendants' alleged inaction as a custom, rather than a policy.

Showing that Scott County Jail had a custom of tolerance or acquiescence of federal rights violations would require presenting proof of: (1) "'a clear and persistent' pattern of unconstitutional conduct by municipal employees"; (2) "the municipality's 'notice or constructive notice' of the unconstitutional conduct"; (3) "the municipality's 'tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction'"; and (4) "that the policy of inaction was the 'moving force' of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the municipality rather than simply by the conduct of the municipal employee." *D'Ambrosio v. Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014) (citation omitted). Plaintiffs fail to satisfy this standard.

First and fatally, plaintiffs do not demonstrate "a clear and persistent" pattern of unconstitutional conduct by municipal employees. That is, plaintiffs have failed to show the county had a custom of deliberate indifference to all the inmates incarcerated at Scott County Jail. *See Winkler*, 893 F.3d at 902 (finding that plaintiff could not show custom or practice of not following county's own established policies where plaintiff only discussed

one inmate's treatment). Defendants have presented evidence that Scott County Jail routinely screened entering inmates for active communicable diseases, including tuberculosis, and conducted physicals of inmates within fourteen (14) days of their booking, during which inmates were screened for six (6) specific symptoms of tuberculosis [Doc. 62-1 p. 11–18]. And, defendants have demonstrated that its booking and medical staff followed these procedures in the case of Inmate X—and in those of Perry and Burchfield [*Id.* at 5–9, 24–28, 30–35].

In contrast, plaintiffs have not presented evidence that the jail has a custom of failing to follow its screening policy. Plaintiffs have not even supported their allegation that Inmate X was not screened for tuberculosis: the record evidence—the "no" answers to the six (6) "TB Screening Questions" on Inmate X's physical examination form—contradicts their unsupported allegation [Doc. 62-1 p. 35].

And, plaintiffs have failed to show that any inmates besides themselves contracted tuberculosis from Inmate X or from another prisoner whose active tuberculosis the jail's procedures failed to identify. Rather, Captain Tucker testified that the four (4) inmates housed with Inmate X who received a skin test tested negative [Doc. 70-3 p. 30]. Defendants have also presented evidence that Inmate X's chest x-ray was negative for active tuberculosis and that Perry and Burchfield were the only people who came into contact with Inmate X during the relevant period who complained of tuberculosis-like symptoms [*Id.* at 9, 36].

Without more, allegations that Perry and Burchfield contracted tuberculosis in Scott County Jail are insufficient to establish a pattern of unconstitutional inaction. *Gregory*,

444 F.3d at 763 ("Although the show-up conducted in this case may have been unconstitutional, a plaintiff 'cannot rely solely on a single instance' to prove the existence of an unconstitutional custom.") (citation omitted); *see also North*, 754 F. App'x at 391 (finding that plaintiff had not presented evidence "showing a widespread custom of [correctional officers] failing to properly forward medical concerns and requests," and "any custom of minimal CO discretion [did] not rise to the level of deliberate indifference").

Accepting plaintiffs' allegations that Inmate X communicated his infection with and displayed clear symptoms of tuberculosis, and that the booking officers knew from their own observations and Burchfield's communication that Inmate X needed immediate medical attention, plaintiffs have presented evidence only of a negligent failure to follow the jail's screening policy in this one case, which does not constitute deliberate indifference. "[T]he failure to follow internal policies, without more, [does not] constitute deliberate indifference." *Winkler*, 893 F.3d at 891 (collecting cases).

Moreover, plaintiffs fail to create a genuine issue of fact as to the existence of a policy requiring TB testing. They point futilely to two places in the record in support of their allegation that defendants' policy required more than inquiry into symptoms of tuberculosis [Doc. 70 p. 2]. The first is a footnote in defendants' communicable diseases policy stating that the Tennessee Corrections Institute ("TCI") "requires inmates to be tested for TB and other diseases on their required physicals" [Doc. 70-1 p. 1]. However, plaintiffs do not provide evidence that TCI actually mandates TB testing or that the footnote indicates Scott County Jail required inmates to be tested for TB. Indeed, as

plaintiffs note, Sheriff Phillips stated that the jail does not and did not require TB tests of every inmate [*Id.* at 2].

Second, plaintiffs cite to Policy No. 11.01, which, as quoted by plaintiffs, stated that physical examinations included "[l]aboratory and/or diagnostic testing or tests to detect communicable diseases, including venereal disease and tuberculosis" [Doc. 70 p. 2]. The context of the "[l]aboratory and/or diagnostic testing" provision makes clear that this provision also did not require TB testing. Policy No. 11.01 stated, "All examinations . . . *shall* be performed in a reasonable and dignified manner and place. Physical examinations *will* be provided to all inmates at the facility within fourteen [14] days of booking . . . The examination *shall* include an inquiry into current illness/health problem" [Doc. 62-1 p. 18 (emphasis added)]. Immediately following the just-discussed text, the provision highlighted by plaintiffs stated, "The examination *may* include . . . [l]aboratory and/or diagnostic testing or tests to detect communicable diseases, including venereal disease and tuberculosis" [*Id.* (emphasis added)]. The policy's usage of "shall" and "may" indicates that the performance of "laboratory and/or diagnostic testing or tests" was discretionary, while "inquiry into current illness/health problem[s]" was required.

Thus, plaintiffs have not demonstrated that the failure of jail personnel to skin test Inmate X for tuberculosis reflected a custom of failing to adhere to defendants' own policy, any more than they have demonstrated a custom of tolerating constitutional violations. Rather, they have effectively alleged nothing more than "negligence or the misdiagnosis of an ailment," which does not rise to the level of deliberate indifference. *Winkler*, 893 F.3d at 891 (citation omitted).

Having found that plaintiffs have failed to present enough evidence of a pattern of rights violations to defeat a motion for summary judgment, the Court's analysis need proceed no further.  *See North*, 754 F. App'x at 392 (finding no deliberate indifference where plaintiff "ha[d] not demonstrated systemic County deficiencies that rise to the level of deliberate indifference").

Because plaintiffs fail to present sufficient evidence of a policy or custom of unconstitutional inaction, defendants are entitled to judgment as a matter of law on their § 1983 claim.  The Court will accordingly **DISMISS** the § 1983 claim, as well as plaintiffs' derivative § 1988 claim.

### D.    State-Law Claims

Plaintiffs also assert various state-law causes of action, including res ipsa loquitur and intentional infliction of emotional distress claims, as well as claims under the Tennessee Governmental Tort Liability Act ("GTLA").

Defendants ask for summary judgment on plaintiffs' res ipsa loquitor claim, arguing that res ipsa loquitur is not a cause of action under Tennessee law [Doc. 63 p. 6].  Plaintiffs fail to address this argument in their response, and the case law supports defendants' argument.  Res ipsa "is a rule of evidence, not a rule of law."  *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 525 (Tenn. Ct. App. 2002) (citing *Quinley v. Cocke*, 192 S.W.2d 992, 996 (Tenn. 1946)); *see also Carrier Corp. v. Piper*, 460 F. Supp. 2d 827, 849 (W.D. Tenn. 2006) ("[R]es ipsa loquitur . . . *is neither a cause of action* nor a ground for recovery, nor an 'issue.'") (quoting *Fassbinder v. Pa. R.R. Co.*, 322 F.2d 859, 863 (3d Cir. 1963) (emphasis added)).  "Thus, 'to the extent that res ipsa loquitur is [pled] as a cause of action

in the complaint, it must be DISMISSED.'" *Carrier Corp.*, 460 F. Supp. 2d at 849-50 (quoting *Steward-Sterling One, LLC. v. Tricon Global Rests., Inc.*, No. Civ.A. 00-0477, 2001 WL 88207 (E.D. La. Jan. 31, 2001)). "Count II" of plaintiffs' complaint titled "res ipsa loquitur" appears to state a claim independent of plaintiffs' "negligent training and supervision" claim [Doc. 30 p. 9]. Thus, plaintiffs appear to have improperly pled res ipsa loquitur as a cause of action. Accordingly, the Court will **DISMISS** this claim.

The Court will also **DISMISS** plaintiffs' intentional infliction of emotional distress claim because plaintiffs state they do not oppose its dismissal [Doc. 70 p. 10].

Defendants also argue that the Tennessee Governmental Tort Liability Act ("GTLA") provides Scott County with immunity from plaintiffs' state-law negligence claims because they arise out of the same set of circumstances as plaintiffs' civil-rights § 1983 claim [Doc. 63 p. 7]. Defendants are therefore, they contend, entitled to summary judgment on these claims [*Id.* at 8]. Plaintiffs do not respond directly to defendants' immunity argument; rather, they ask the Court to allow plaintiffs to proceed on their negligence claims under the GTLA, whether in this Court or in state court, if the Court grants defendants' summary judgment on plaintiffs' § 1983 claims [Doc. 70 p. 10].

While a district court has supplemental jurisdiction over state-law claims forming "part of the same case or controversy" as claims over which the court exercises original jurisdiction, 28 U.S.C. § 1367(a), a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)). Because the Court will dismiss all of plaintiffs' claims arising under federal law, namely their §§ 1983,

1985 and 1988 claims, it will also **DISMISS without prejudice** plaintiffs' remaining state-law claims under the GTLA.

## III. Conclusion

Defendants' motion for summary judgment is **GRANTED in part**. Because plaintiffs fail to create a genuine issue of fact regarding their § 1983 and derivative § 1988 claims and because defendants are entitled to judgment as a matter of law, the Court will **DISMISS with prejudice** plaintiffs' §§ 1983 and 1988 claims against all defendants. The Court will also **DISMISS with prejudice** plaintiffs' § 1985 claim. Plaintiffs' remaining state-law claims are **DISMISSED without prejudice**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE